IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0047-WJM-KMT

ANNEMICHELLE JOHNSON,

    Plaintiff,

v.

GOLD'S GYM ROCKIES, LLC,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff AnneMichelle Johnson ("Plaintiff") brings this premises liability action against Defendant Gold's Gym Rockies, LLC ("Defendant") pursuant to the Colorado Premises Liability Act ("CPLA"; Colo. Rev. Stat. §13-21-115) for back injuries she allegedly sustained when she attempted to use a broken rowing machine. (ECF No. 7.) This matter is before the Court on Defendant's Motion for Summary Judgment (the "Motion"; ECF No. 28). For the reasons set forth below, the Court grants the Motion.

### I. BACKGROUND

The following factual summary, viewed in the light most favorable to the nonmoving party, is largely based on the parties' briefs on the Motion and documents submitted in support. These facts are undisputed unless attributed to a party.

Defendant operates fitness clubs in Colorado Springs, Colorado. (ECF No. 28 at 1.) Among these clubs is "Gold's Gym Colorado Springs (Rustic Hills)" (the "Gym"). (ECF No. 11 at 2, ¶ 3.) Plaintiff joined the Gym on May 25, 2015, by executing the

"Gold's Gym Membership Agreement" (the "Membership Agreement"; ECF No. 28-1 at 3–4). (ECF No. 28 at 1.) The Membership Agreement contained two exculpatory provisions which provided, in pertinent part, as follows:

> **WAIVER OF LIABILITY: MEMBER ACKNOWLEDGES THAT THE USE OF GOLD'S GYM'S FACILITIES [AND] EQUIPMENT . . . INVOLVES AN INHERENT RISK OF PERSONAL INJURY TO MEMBER. . . . MEMBER VOLUNTARILY AGREES TO ASSUME ALL RISKS OF PERSONAL INJURY TO MEMBER . . . AND WAIVES ANY AND ALL CLAIMS OR ACTIONS THAT MEMBER MAY HAVE AGAINST GOLD'S GYM . . . FOR ANY SUCH PERSONAL INJURY . . . INCLUDING, WITHOUT LIMITATION: (I) INJURIES ARISING FROM USE OF ANY EXERCISE EQUIPMENT [OR] MACHINES . . . ; (III) INJURIES ARISING FROM GOLD'S GYM'S NEGLIGENCE, WHETHER DIRECT OR INDIRECT; (IV) INJURIES . . . RESULTING FROM EXERCISING AT ANY GOLD'S GYM, INCLUDING . . . SPRAINS, BROKEN BONES AND TORN OR DAMAGED MUSCLES, LIGAMENTS OR TENDONS . . . .**
>
> **ASSUMPTION OF RISK AND INDEMNIFICATION:** Member acknowledges that [ ] Gold's Gym does not manufacture any of the fitness or other equipment at its facilities . . . ; accordingly, [ ] Gold's Gym . . . shall [not] be held liable for any such defective equipment. . . . Member shall indemnify Gold's Gym . . . and save and hold [it] harmless against and pay on behalf of or reimburse [Gold's Gym] as and when incurred for any losses which [Gold's Gym] may suffer, sustain or become subject to, as a result of, in connection with, relating or incidental to or by virtue of any claim that is the subject of the waiver set forth above.

(The "Exculpatory Provisions"; ECF No. 28-1 at 4 (emphasis in original).)

On January 5, 2016, Plaintiff was exercising at the Gym when she allegedly injured herself. The following is Plaintiff's account of the events that led up to her alleged injury:

> [Plaintiff] was alone in an area of exercise machines for approximately 14 or 15 minutes, and sat down on a seated cable rowing machine as part of her workout. She placed the pin at her regular weight of 60 pounds, sat down on the machine, put her feet in the stirrups, and pulled back vigorously. The weight stack did not move, and she felt a pop in her back.
>
> [Plaintiff reduced the weight to 40 pounds and] pulled again, with the weight stack again not moving. [Plaintiff] then took the pin out, freeing the machine from the weight stack, and pulled again in a seated position. The machine was freed from the weight stack and the bar should have easily moved.
>
> The bar did not move at all, and at that point [Plaintiff] realized the machine was broken. . . . Shortly after this, [Defendant's] employee came over to the seated cable rowing machine and told Plaintiff that the machine was broken and he was there to fix it.

(ECF Nos. 7 at 2, ¶¶ 7–8 & 29 at 2.) As a result of her using the broken rowing machine, Plaintiff alleges that she suffered severe back injuries. (ECF No. 7 at 2, ¶ 9.)

Plaintiff initially filed this action on December 19, 2017, in El Paso County District Court. (ECF No. 1-1.) On January 8, 2018, Defendant removed the action to this Court on the basis of diversity jurisdiction. (ECF No. 1.) Plaintiff's sole claim against Defendant is brought pursuant to the CPLA, whereby Plaintiff alleges that Defendant breached its duty to exercise reasonable care. (ECF No. 7 at 3, ¶ 13.) Defendant moved for summary judgment on August 23, 2018. (ECF No. 28.) In the Motion, Defendant asserts that Plaintiff's claim "is barred by the valid and enforceable waiver of liability and assumption of the risk provisions in Plaintiff's Membership Agreement." (*Id.* at 2.) Plaintiff subsequently filed a response to the Motion ("Response"; ECF No. 29), to which Defendant replied ("Reply"; ECF No. 32).

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

Where, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts

that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotation marks omitted). A party must support an assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### III.  ANALYSIS

"Under Colorado law, 'exculpatory agreements have long been disfavored,' *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998), and it is well-established that such agreements cannot 'shield against a claim for willful and wanton conduct, regardless of the circumstances or intent of the parties,' *Boles v. Sun Ergoline, Inc.*, 223 P.3d 724, 726 (Colo. 2010)." *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1249 (10th Cir. 2018). "But claims of negligence are a different matter. Colorado common law does not categorically prohibit the enforcement of contracts seeking to release claims of negligence." *Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1152 (10th Cir. 2016).

"The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine." *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981). Accordingly, the Colorado Supreme Court has instructed courts to consider the following four factors when determining the enforceability of an exculpatory agreement: "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the

5

intention of the parties is expressed in clear and unambiguous language [collectively, the '*Jones* factors']." *Id*. An exculpatory agreement "must satisfy all four factors to be enforceable." *Raup v. Vail Summit Resorts, Inc.*, 734 F. App'x 543, 546 (10th Cir. 2018).

Defendant concisely argues that the Exculpatory Provisions satisfy the first three *Jones* factors. (ECF No. 28 at 7–10.) *See Stone v. Life Time Fitness, Inc.*, 411 P.3d 225, 229 (Colo. App. 2017) (finding that the first three *Jones* factors were readily satisfied by an exculpatory provision contained in a fitness club's membership agreement). In her Response, Plaintiff only addresses the fourth *Jones* factor and concedes "that it is the fourth factor regarding clear and unambiguous language which is the focus for the determination of this motion for summary judgment." (ECF No. 29 at 6 (emphasis omitted).) Given Plaintiff's candid concession, the Court concludes that the Exculpatory Provisions satisfy the first three *Jones* factors, and therefore the Court need only address the fourth and final factor.

Under the fourth factor, "[t]he inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 785 (Colo. 1989)). The Colorado Supreme Court has explained that "[t]o determine whether the intent of the parties is clearly and unambiguously expressed, [a court may] examine[ ] the actual language of the agreement for legal jargon, length and complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions.'" *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004). A court may

6

also "take[ ] into account an injured party's subsequent acknowledgment that he understood the meaning of the provision." *Id*.

After carefully analyzing the Membership Agreement and its Exculpatory Provisions, the Court finds that it was the intent of the parties to extinguish liability, and this intent was clearly and unambiguously expressed. The language in the Exculpatory Provisions is clear and unambiguous, and these provisions are not overburdened with extensive or complex legal jargon. The provisions are not inordinately long (less than half a page) or complicated. *See Lahey v. Covington*, 964 F. Supp. 1440, 1445 (D. Colo. 1996) (concluding that a release agreement of "just over one page" was "short").

Moreover, the Court finds that the organization of the Membership Agreement and the placement of its release language makes it unrealistic that the Exculpatory Provisions could be missed or misunderstood. *See Chadwick*, 100 P.3d at 468. Each provision has its own subheading, written in bold font with all capital letters and underlined. (ECF No. 28-1 at 4.) The Waiver of Liability provision is in larger font than the rest of the page, and Plaintiff signed the Membership Agreement directly underneath these provisions. (*Id*.) Between Plaintiff's signature and the Exculpatory Provisions is a sentence instructing Plaintiff: "<u>Do not sign this Agreement until you have read both sides</u>." (ECF No. 28-1 at 4 (emphasis in original).)

In her deposition, Plaintiff admitted that she saw this instruction, read the entire Membership Agreement, read and understood the Waiver of Liability provision, and understood the effect of executing the provision. (ECF No. 28-3 at 13–15.) *See Chadwick*, 100 P.3d at 467 (in determining whether an exculpatory provision satisfies

7

the fourth *Jones* factor, a court may "take[ ] into account an injured party's subsequent acknowledgment that he understood the meaning of the provision"). Thus, under the standard expressed by the Colorado Supreme Court in *Chadwick*, the Exculpatory Provision was clear and unambiguous. *See id*.

Plaintiff maintains, however, that the Exculpatory Provisions are not enforceable because the provisions do not (1) "sufficiently notify Plaintiff Johnson that she was releasing Gold's Gym from liability for negligence causing her injuries from broken or defective exercise machines;" and (2) "specifically describe nor include injuries from broken or defective exercise equipment or machines." (ECF No. 29 at 13.) In sum, Plaintiff's arguments appear to be solely based on her belief that the Exculpatory Provisions did not reference "broken or defective exercise machines." (*See* ECF No. 29.)

The Court is not convinced. At the outset, the Court notes that Plaintiff's arguments fail on their face given that the Exculpatory Provisions do in fact refer to defective fitness equipment. In particular, one of the Exculpatory Provisions provides: "Member acknowledges that [ ] Gold's Gym does not manufacture any of the *fitness* or other equipment at its facilities," and therefore Gold's Gym shall not "be held liable for any such *defective equipment*." (ECF No. 28-1 at 4 (emphasis added).)[1] Accordingly, it is beyond dispute that, contrary to Plaintiff's arguments, the Exculpatory Provision does in fact reference defective fitness equipment and therefore it was clearly contemplated

---

[1] Plaintiff completely ignores this provision in her Response (*see* ECF No. 29), even though the provision was discussed in the Motion (*see, e.g.*, ECF No. 28 at 2–4 ("Plaintiff's claim . . . is barred by the valid and enforceable waiver of liability and *assumption of the risk provisions* in Plaintiff's Membership Agreement." (emphasis added)).)

by the parties when the Membership Agreement was executed.

If Plaintiff means to say that the reference to defective fitness equipment is not in the correct exculpatory provision (*i.e.*, that it should be in the "Waiver of Liability" provision and not the "Assumption of Risk and Indemnification" provision), Plaintiff does not argue or provide any authority as to why that would matter in this case. Moreover, even if there is some significance to the fact that the reference to defective fitness equipment is in a separate provision and under a separate heading, all Plaintiff appears to be alleging from her filings is that Gold's Gym was negligent for "fail[ing] to put an 'Out of Order' sign on this broken machine" and for "fail[ing] to warn its patrons in any way of the danger of this broken seated cable rowing machine." (ECF No. 7 at 2; *see* ECF No. 29 at 2.) However, it is abundantly clear that the parties exculpated negligence liability. In particular, the Waiver of Liability provision contained in the Membership Agreement states:

> **MEMBER VOLUNTARILY AGREES TO ASSUME ALL RISKS OF PERSONAL INJURY TO MEMBER . . . AND WAIVES ANY AND ALL CLAIMS OR ACTIONS THAT MEMBER MAY HAVE AGAINST GOLD'S GYM . . . FOR ANY SUCH PERSONAL INJURY . . . INCLUDING, WITHOUT LIMITATION: . . . <u>INJURIES ARISING FROM GOLD'S GYM'S NEGLIGENCE, WHETHER DIRECT OR INDIRECT</u>.**

(ECF No. 28-1 at 4 (emphasis in original).) Therefore, even if the Court were to ignore the clause regarding defective fitness equipment, Plaintiff's claim would still fail as her only allegations against Defendant is that her injuries were a result of Defendant's negligent failure to warn—a type of claim that the Membership Agreement explicitly exculpates.

9

The Court also notes that, contrary to Plaintiff's argument, Colorado law does not require "that an exculpatory agreement describe in detail each specific risk that the signor might encounter. Rather, an exculpatory agreement bars a claim if the agreement clearly reflects the parties' intent to extinguish liability for that type of claim." *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 873 (10th Cir. 2013); *see also Heil Valley Ranch*, 784 P.2d at 785. A review of the Exculpatory Provisions clearly reflects the parties' intent to extinguish liability for Plaintiff's type of claim.

In sum, Plaintiff alleges that she sustained injuries when she used a broken rowing machine at the Gym. (ECF No. 7 at 2, ¶¶ 7 & 9.) However, Plaintiff explicitly waived "**ANY AND ALL CLAIMS OR ACTIONS**" against Defendant for "**INJURIES ARISING FROM USE OF ANY EXERCISE EQUIPMENT [OR] MACHINES**" at the Gym. (ECF No. 28-1 at 4 (emphasis in original).) Similarly, Plaintiff alleges that Defendant failed to put an "Out of Order" sign on the broken rowing machine. (ECF No. 7 at 2, ¶ 8.) However, Plaintiff expressly waived "**ANY AND ALL CLAIMS OR ACTIONS**" against Defendant for "<u>**INJURIES ARISING FROM GOLD'S GYM'S NEGLIGENCE, WHETHER DIRECT OR INDIRECT**</u>." (ECF No. 28-1 at 4 (emphasis in original).) Likewise, Plaintiff alleges that she sustained injuries from the use of Defendant's exercise equipment. (ECF No. 7 at 2, ¶¶ 7 & 9.) However, Plaintiff explicitly waived "**ANY AND ALL CLAIMS OR ACTIONS**" against Defendant for injuries "**RESULTING FROM EXERCISING AT ANY GOLD'S GYM**." (ECF No. 28-1 at 4 (emphasis in original).) Lastly, Plaintiff alleges that her injuries were caused by a broken rowing machine at the Gym. (ECF No. 7 at 2, ¶¶ 7–9.) However, Plaintiff

expressly agreed to not hold Defendant liable for any defective fitness equipment at the Gym. (ECF No. 28-1 at 4.) Thus, it is irrefutable that the Exculpatory Provisions clearly reflect an intent to extinguish liability for Plaintiff's type of claim, and that Plaintiff's alleged injuries are the type of injuries contemplated by the Membership Agreement.

It is thus beyond dispute that it was the parties' intention to extinguish liability and that this intention was clearly and unambiguously expressed. Therefore, the Court finds that all four of the *Jones* factors are satisfied and that the Exculpatory Provisions are valid as a matter of law. *See Anderson v. Eby*, 998 F.2d 858, 862 (10th Cir. 1993) ("If the plain language of the waiver is clear and unambiguous, it is enforced as a matter of law."). In addition, the Court finds Plaintiff's claim to fall within the scope of the enforceable Exculpatory Provisions. Accordingly, summary judgment is appropriate against Plaintiff.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 28) is GRANTED;
2. The Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff, and shall terminate this case; and
3. Defendant shall have its costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 11th day of March, 2019.

BY THE COURT:

William J. Martínez
United States District Judge